**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **DENISE ILLENE FORAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:11-00185** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f.

This case is presently pending before the Court on  the parties' cross-Motions for Judgment on the

Pleadings. (Document Nos. 16 and 17.) Both parties have consented in writing to a decision by the

United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Denise Illene Foran (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on June 2, 2008 (protective filing date), alleging disability as of October 31, 2003, due

to "depression, panic attacks, and mood swings."[1] (Tr. at 13, 115-22, 123-29, 155, 158.) The claims

were denied initially and upon reconsideration. (Tr. at 58-61, 62-64, 67-69, 74-76.) On February 27,

---

[1] On her form Disability Report - Appeal, dated October 1, 2008, Claimant alleged the
following additional disabling impairments: "Severe anxiety. My nervousness is so bad that my
hands shake. I have insurance. I break out daily several times a day in huge red streaks and welps
that severely itch." (Tr. at 205.) In a further Report dated December 22, 2008, Claimant reported that
her hands were shaking worse and that she was having more panic attacks. (Tr. at 227.)

2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 80-81.) The hearing was held on May 13, 2010, before the Honorable Joseph T. Scruton. (Tr. at 32-57.) By decision dated June 23, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-26.) The ALJ's decision became the final decision of the Commissioner on March 10, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On March 22, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

3

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, October 31, 2003. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from major depressive disorder; generalized anxiety disorder; polysubstance abuse/alcohol dependence now in remission; back strain; left shoulder strain; and history of edema," which were severe impairments. (Tr. at 16, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional level work as follows:

> [T]he [C]laimant has had the residual functional capacity to perform the exertional demands of light work as defined in 20 CFR 404.1567(b) and 416.967(b), but subject to several nonexertional limitations. More specifically, due to the effects of unrelieved pain, psychological symptoms, and side effects from her medications the [C]laimant is able to maintain attention and concentration for tasks that have short and simple instructions, involve only occasional changes in the work setting, and deal with things rather than people meaning that she can be around other people such as supervisors and coworkers, but should only occasionally converse with or interpersonally interact with

these people and have only brief superficial contact with the general public.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past

relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform work as food

preparation worker, dish washer, and housekeeper, at the light and unskilled level of exertion. (Tr. at

25-26, Finding No. 10.) On this basis, benefits were denied. (Tr. at 26, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the

claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined

as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be somewhat
> less than a preponderance. If there is evidence to justify a refusal to direct a verdict
> were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640,

642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on July 13, 1962, and was 48 years old at the time of the administrative

hearing, May 13, 2010. (Tr. at 25, 36-37, 115, 123.) Claimant had a high school education, one year of college education, a medical file clerk certificate from vocational schooling, and was able to communicate in English. (Tr. 25, 36, 38, 164.) In the past, she worked as a greenhouse worker, waitress, convenience store worker, grocery store/department store worker, file clerk, and floral arranger. (Tr. at 25, 36, 38-39, 51, 160-61, 166-75.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Bland County Medical Clinic:

Claimant established treatment at the Bland County Medical Clinic ("BCMC") on December 14, 2006, primarily for her physical impairments, but also for her mental impairments. (Tr. at 232-57, 315-20, 395-420.) Claimant reported alcoholism and depression on December 14, 2006, for which she was prescribed Prozac 20mg. (Tr. at 241-43.) Claimant reported that she had consumed no alcohol since her last visit and it was noted that she was oriented and was not depressed. (Tr. at 239-40.) Claimant next was examined on July 6, 2007, for complaints of anxiety, depression that had worsened, a down mood, and ineffective medication. (Tr. at 237-38.) Claimant reported a three month sobriety. (Tr. at 237.)  Elaine Harper, ANP-C observed that Claimant was pleasant, alert, and oriented; made normal eye contact; and presented with a pleasant but depressed mood and a flat affect. (Tr. at 238.) Ms. Harper stopped the Prozac 20mg and prescribed Wellbutrin XL tablet, extended release, 150mg. (Id.) Claimant cancelled her appointment on August 14, 2007, because her medication was working fine. (Tr. at 236.)

Claimant reported on May 23, 2008, an increase in panic attacks and crying spells, moments of anxious to extreme rage, sleep disturbance, and a general worsening of symptoms since her last

exam. (Tr. at 232.) Ms. Harper observed that Claimant was alert, tearful, and oriented; was groomed adequately; maintained normal eye contact; and presented with a pleasant, anxious, and depressed mood with a flat affect. (Tr. at 233-34.) Ms. Harper diagnosed depression, for which she continued the Wellbutrin XL tablet 150mg and anxiety for which she prescribed Celexa tablet 20mg. (Tr. at 234-35.)

Claimant reported on July 24, 2008, that her medications had been of significant benefit, that her anxiety was stable and improving, that her panic attacks were improving and less frequent, that her sleep disturbance had improved, that her energy had increased, and that her mood was stable. (Tr. at 316.) Claimant had undergone counseling and noted that her alcoholism had improved with her last drink three weeks ago. (Id.) Ms. Harper diagnosed depression and anxiety and continued the Wellbutrin XL tablet 150mg and Celexa 20mg. (Tr. at 317.) Nearly six months later however, Claimant reported on January 20, 2009, that her medications were of mild benefit and requested medication for her nerves. (Tr. at 415.) Her anxiety had increased, mood and panic attacks were stable, and she reported sleep disturbance from lying in bed worrying. (Id.) Ms. Harper observed a pleasant but sad mood and a flat affect. (Tr. at 416.) She continued the Wellbutrin XL and Celexa, and prescribed Xanax .25mg. (Id.)

Claimant again reported on May 14, 2009, that her medications were of significant benefit, with improved and stable depression and anxiety, but with unchanged sleep disturbances. (Tr. at 410.) Ms. Harper continued the diagnoses of anxiety and depression, as well as alcohol abuse NOS, for which she continued Claimant on Wellbutrin XL, Celexa, and Xanax. (Tr. at 412.) Claimant's mental impairments were stable on September 4, 2009, and she reported that she was seeing a psychiatrist, Dr. Hasan, at Southern Highlands. (Tr. at 408-09.) Claimant reported on October 27, 2009, that she had been in a physical altercation with her step-daughter on September 23, 2009, wherein Claimant was stomped in the face. (Tr. at 406-07.) Finally, Claimant reported on March 15, 2010, that her

8

medications were of significant benefit and that her mood was stable and her anxiety stable, but fluctuating. (Tr. at 395.) She continued to report difficulty falling asleep, but denied suicidal ideations, hallucinations, paranoia, and change in energy, weight, appetite, or concentration. (Id.) Ms. Harper continued her diagnoses of anxiety and depression and her medications. (Tr. at 396-97.)

Southern Highlands Community Mental Health Center:

_Ira T. Webb, Jr., PA-C_:

Claimant initiated treatment at Southern Highlands Community Mental Health Center ("Southern Highlands") in January, 2009. (Tr. at 321-36, 337-42.) Mr. Webb, a physician's assistant, conducted a psychiatric evaluation on January 27, 2009. (Tr. at 337-42.) Mr. Webb observed normal psychomotor activity, a depressed mood and broad affect, soft speech, rational thought content, alertness and orientation, normal memory and attention, intact cognition, intact insight and judgment, and average intelligence. (Tr. at 340.) Claimant denied hallucinations, delusions, and homicidal or suicidal ideation. (Id.) She reported somatic complaints of grabbing and pinching herself when anxious. (Id.) Mr. Webb diagnosed bipolar disorder, depressed; generalized anxiety disorder; alcohol dependence, in remission; posttraumatic stress disorder; personality disorder, not otherwise specified; and assessed a GAF of 55.[3] (Tr. at 340.) He discontinued the Wellbutrin XL 150mg, continued the Celexa 20mg and added 10 additional milligrams daily, continued the Xanax .25mg, prescribed Risperdal 1mg and Ambien 10mg, and referred her to counseling. (Id.)

Claimant thereafter was treated on six occasions in January, February, April, May, August, and

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

September, 2009. (Tr. at 362-66.) Mental status exams during these occasions revealed a depressed and anxious mood, anxious affect, appropriate speech, adequate sleep, baseline energy and appetite, an absence of suicidal or homicidal ideations normal stream of thought, appropriate content of thought, no hallucinations or obsessions, good insight and judgment, baseline cognitive functioning, and good memory. (Id.) Claimant reported on February 25, 2009, that she was doing well, the medication was working well, she was sleeping better, and her mood was stable.

     *Dr. Nusrath Hasan, M.D.*:

     Dr. Hasan, a psychiatrist at Southern Highlands, completed a form Medical Source Statement of Ability to Do Work-Related Activities, on March 30, 2010, wherein he opined that Claimant had extreme limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual; perform at a consistent pace; interact appropriately with supervisors; respond appropriately to work pressures in a usual work setting; and respond appropriately to change in a routine work setting. (Tr. at 379-80.) Dr. Hasan assessed marked limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work with or near others without being distracted by them; complete a normal workday or workweek; and interact appropriately with the public and co-workers. (Id.) Moderate limitations were assessed in her ability to sustain an ordinary routine without special supervision and make simple work-related decisions. (Id.) No limitations were assessed in her ability to understand, remember, and carry out short, simple instructions. (Tr. at 379.) Dr. Hasan noted that Claimant could remember locations, but struggled with remembering work-like procedures. (Id.)

     Another mental RFC assessment appeared in the record following Dr. Hasan's opinion, but it was neither signed nor dated. (Tr. at 382.) This opinion assessed good ability to maintain personal appearance and fair ability to use judgment and understand, remember, and carry out simple job

10

instructions. (<u>Id.</u>) The opinion indicated that Claimant had poor ability to relate to co-workers, deal with the public, interact with supervisors, function independently, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out complex and detailed job instructions. (<u>Id.</u>) Finally, it indicated that Claimant had no ability to deal with work stresses. (<u>Id.</u>)

<u>Kelly Robinson, M.A.</u>:

Ms. Robinson, a licensed psychologist, conducted a psychological evaluation on September 29, 2008. (Tr. at 261-67.) Claimant reported a depressed mood, diminished interest in activities, withdrawal from people, crying spells, an increase in weight, sleep difficulty, feelings of worthlessness and fatigue, a decline from her previous level of functioning, an aggravated and anxious mood, and a worsening of problems since the age of 34. (Tr. at 261.) She also reported unexpected fearful episodes characterized by irritability, sweating, shakiness, nausea, breathing difficulty, heart palpitations, feelings of nervousness and racing thoughts, feelings of being trapped, anger, and agitation. (Tr. at 262.) The episodes occurred around others and when she was alone. (<u>Id.</u>) Claimant also reported occasional alcohol use and that she drank eight beers twice a month, and a history of drug use that involved marijuana, speed, acid, and cocaine for a period of ten years. (<u>Id.</u>) Claimant drove herself to the evaluation. (Tr. at 261.) Ms. Robinson observed a dysphoric mood and mildly restricted affect, logical and coherent thought processes, no unusual perceptual experiences or thought content, fair insight, normal memory and judgment, psychomotor agitation, moderately deficient concentration, and a history of two suicide attempts by overdose but no current suicidal or homicidal ideation. (Tr. at 263-64.) She diagnosed major depressive disorder, recurrent, severe without psychotic features; panic disorder with agoraphobia; alcohol dependence; and polysubstance abuse dependence, in remission. (Tr. at 264.) Ms. Robinson opined that her social functioning and pace were limited mildly

and her persistence was within normal limits. (Tr. at 265-66.) Claimant reported that she did the laundry independently, changed the bed sheets, vacuumed three rooms, went grocery shopping independently for approximately 30 minutes, washed the dishes by hand, watched television, and cared for her dogs. (Tr. at 265.) Ms. Robinson concluded that Claimant was unable to manage any benefits due to alcohol dependence and opined that her prognosis was fair. (Tr. at 266.)

L. Andrew Steward, Ph.D.:

Dr. Steward, a licensed psychologist, conducted a psychological evaluation on October 22, 2009, at the request of Claimant's attorney. (Tr. at 367-74.) Dr. Steward observed that Claimant was dressed and groomed appropriately, appropriately talkative and easily established rapport, tried diligently on the test items, has a constricted affect with some lability, had a consistently anxious and dysphoric mood, was oriented in all spheres, presented no evidence of hallucinations or delusions, had average fund of information, a depressed ability to perform calculations, and average judgment, abstract reasoning, attention, and concentration. (Tr. at 367-68.) Claimant reported constant nervousness and depression, anxiety in public places, panic attacks especially when she went out by herself, irritability, rudeness, suicidal and homicidal thoughts but no attempt, regular appetite, and a need for Xanax to sleep. (Tr. at 368.) Claimant reported that she cried a lot, had feelings of uselessness and worthlessness her entire life, low self-esteem, paranoid of people and when in certain places, nightmares, a history of abuse by her father, and thoughts of revenge toward her father. (Tr. at 369.) Claimant cared for her three dogs, did gardening and canning in the summer months, enjoyed being outside, read books, walked in the woods, talked on the phone to only three people, that she was irritated much by people in general, that she drove very little and only if she had to, and that she belonged to no clubs or churches. (Id.)

Intellectual testing revealed a verbal IQ of 89, a performance IQ of 85, and a full scale IQ of

87, which placed Claimant within the low average range of intellectual abilities. (Tr. at 370-71.) Results of the BAI and BAI-II suggested severe anxiety and depression. (Tr. at 371.) Dr. Steward opined that the test results were valid and reliable. (Tr. at 367.) Dr. Steward diagnosed major depressive disorder, recurrent, severe without psychotic features; generalized anxiety disorder; panic disorder with agoraphobia; and a GAF of 47.[4] (Tr. at 372-73.) He concluded that Claimant was "permanently and totally disabled from any type of substantial gainful occupation...for at least a year or more." (Tr. at 373.) He opined that her prognosis was poor, though she was able to manage her own funds. (Id.)

Dr. Steward completed on October 22, 2009, a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), wherein he opined that Claimant was moderately limited in her ability to remember locations and work-like procedures; understand, remember, and carry out short, simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; and respond appropriately to changes in a routine work setting. (Tr. at 375-77.) He assessed marked limitations in all remaining categories. (Id.)

State Agency Psychologists:

*Timothy Saar, Ph.D.*:

Dr. Saar, a state agency psychologist, completed a form Psychiatric Review Technique ("PRT") on October 6, 2008, wherein he opined that there was insufficient evidence prior to Claimant's date last insured ("DLI"), June 30, 2006, to assess her mental functional limitations. (Tr. at 268-81.) Regarding Claimant's SSI claim, Dr. Saar opined that her major depressive disorder,

---

[4] GAF of 41-50 indicates that the person has serious symptoms, or serious impairment in social, occupational or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

anxiety, panic attacks, and alcohol dependency were non-severe impairments, resulting in no more than mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. at 282-95.)

_H. Hoback Clark, M.D._:

Dr. Clark, a state agency psychiatrist, reviewed the record and affirmed that there was insufficient evidence prior to the DLI to assess Claimant's mental functional capacity regarding her DIB claim. (Tr. at 296.) Dr. Clark opined with respect to the SSI claim that Claimant was not fully credible and agreed with the limitations assessed by Ms. Robinson. (Id.) Dr. Clark also opined that the impairments did not meet or equal a listing impairment. (Id.) Dr. Clark also completed a form MRFC Assessment, wherein she opined that Claimant was limited moderately in her ability to maintain attention and concentration for extended periods. (Tr. at 311-13.) Dr. Clark further opined that Claimant was able to understand, remember, and follow simple and complex instructions, and that her concentration was limited, but had no significant limitations in pace, persistence, or social functioning. (Tr. at 313.) Dr. Clark concluded that Claimant was able to perform work-like activities on a sustained basis. (Id.)

_Rosemary L. Smith, Psy.D._:

Dr. Smith, a state agency psychiatrist, completed a form PRT on February 9, 2009, where she affirmed that Claimant's DIB claim could not be assessed as of her DLI due to insufficient evidence and affirmed Dr. Saar's PRT. (Tr. at 343-56, 361.) After Claimant's DLI, Dr. Smith opined that Claimant's mental impairments resulted in mild limitations in activities of daily living; moderate limitations in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 353.) She further opined that the evidence did not establish the presence of the "C" criteria necessary to meet or equal a listing level impairment. (Tr. at

14

354.)

Dr. Smith also completed on February 9, 2009, a form MRFC Assessment wherein she opined that Claimant's mental impairments caused moderate limitations in her ability to maintain attention and concentration for extended periods, to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 357-58.) She concluded that Claimant retained the ability to learn and perform a variety of work-like activities in a low stress environment that involved limited contact with others. (Tr. at 359.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's mental residual functional capacity ("MRFC").[5] (Document No. 17 at 6-11.) Claimant asserts that the "ALJ arbitrarily selected" comments from the BCMC records, which diminished the extent and severity of her mental impairments contrary to the holdings in Kellough v. Heckler, 785 F.2d 1147, 1153 (4th Cir. 1986) and Kennedy v. Hechler, 602 F.Supp 709, 712 (W.D. N.C. 1985). (Id. at 6-7.) She contends that the staff at BCMC did not believe she had stabilized, as the ALJ found she had, because they referred her to Southern Highlands for treatment. (Id.)

Claimant further alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assigning weight to the opinions of Ms. Robinson, Dr. Steward, and Dr. Hasan. (Document No. 17 at 7-11.) Claimant asserts that the ALJ "missed the big picture" in giving Ms. Robinson's opinion only "some weight," and failed to acknowledge that although Ms.

---

[5] Claimant agrees with the Commissioner that she did not prove her disability prior to her date last insured, and therefore, was not entitled to Title II benefits.(Document No. 19 at 1.) The Court therefore, does not address herein Claimant's arguments in relation to her claim for DIB.

15

Robinson considered little evidence in formulating her opinion, she assessed the same diagnoses that later were confirmed by Drs. Steward and Hasan. (<u>Id.</u> at 7.) Regarding Dr. Steward, Claimant asserts that the ALJ failed to attribute any weight to his opinion and MRFC assessment. (<u>Id.</u> at 7-8.) She contends that the ALJ erred in discounting his opinion because his GAF score was contradictory to Dr. Hasan's GAF during the same time frame. (<u>Id.</u> at 7.) Claimant asserts that "GAF scores cannot be contradictory unless they are different scores rendered by different examiners at the same time." (<u>Id.</u>) She further asserts that the ALJ improperly noted that Dr. Steward needed to have familiarity with the Regulations to render an opinion of disability. (<u>Id.</u> at 8.) Claimant further asserts that the ALJ found neither Dr. Steward's methodology, nor his credentials faulty, but rather gave his opinion less weight because it was a one time evaluation and because counsel arranged for the evaluation. (<u>Id.</u> at 8-9.) Finally, Claimant asserts that the ALJ improperly gave greater weight to Dr. Smith's opinion over Dr. Steward's opinion, when Dr. Smith's opinion pre-dated the Commissioner's receipt of Dr. Hasan's notes and opinion, as well as Dr. Steward's opinion. (<u>Id.</u> at 9.)

Claimant finally asserts that the ALJ unreasonably gave less weight to Dr. Hasan's opinion because it was in the form of a checklist, when he gave significant weight to Dr. Smith's checklist opinion. (<u>Id.</u> at 10.) Furthermore, Claimant asserts that the ALJ took the references to Claimant's being stable out of context because being stabilized with medication did not correlate with an ability to engage in substantial gainful activity. (<u>Id.</u> at 10-11.)

In response, the Commissioner asserts that the ALJ properly considered all the evidence of record and reasonably formulated Claimant's residual functional capacity. (Document No. 14 at 13-17.) The Commissioner contends that the medical evidence, treatment history, and the opinion evidence support the ALJ's MRFC assessment. (<u>Id.</u>) He asserts that Claimant essentially had normal exam findings and had stabilized and improved with medication. (<u>Id.</u> at 14.) The Commissioner notes

16

that Claimant received conservative, infrequent, and routine treatment for a period in excess of six years, with several two or three months gaps between treatment. (Id. at 14-15.) Furthermore, the Commissioner asserts that the ALJ's MRFC assessment is supported by the opinions of Ms. Robinson, Dr. Smith, and the state agency medical consultants' opinions. (Id. at 14-16.) Contrary to Claimant's argument, the Commissioner asserts that the ALJ was entitled to rely on Dr. Smith's opinion because though she may not have had access to all the medical and opinion evidence, the ALJ considered the same in formulating his MRFC. (Id. at 15-16.) The Commissioner also noted that Claimant's self-reported activities of daily living supported the ALJ's MRFC finding. (Id. at 16-17.)

In addressing Claimant's second argument, the Commissioner asserts that the ALJ properly evaluated the opinions of Dr. Steward, Dr. Hasan, and Mr. Webb, whose opinions were unsupported by the evidence of record. (Id. at 17-20.) Regarding Dr. Steward, the Commissioner asserts that his opinion was not warranted more weight due to the one-time examining relationship and the length and frequency of his treating relationship with Claimant. (Id. at 17-18.) He notes that Dr. Steward's opinion was contradicted by Dr. Hasan's treatment notes and GAF scores and was undermined by the records from BCMC, which indicated that her depression and anxiety were stable and symptoms improved with medication. (Id. at 18.) Finally, the Commissioner asserts that Dr. Steward's opinion was not entitled controlling or significant weight because his opinion was an issue reserved to the Commissioner. (Id. at 18-19.)

The Commissioner asserts that Dr. Hasan's opinion was not entitled controlling or significant weight because it was in the form of a checklist with no supporting explanation and was unsupported by his little-to-no abnormal objective findings in his treatment records. (Id. at 19.) Dr. Hasan failed to make a logical connection between Claimant's alleged limitations and her clinical status. (Id.) Accordingly, the Commissioner contends that Dr. Hasan's opinion was not entitled to significant

17

weight. (Id.)

Finally, the Commissioner asserts that the ALJ properly discounted Mr. Webb's diagnoses because he was neither a psychiatrist nor psychologist, and therefore, pursuant to 20 C.F.R. §§ 404.1513(a) and 416.913(a), was not an acceptable medical source. (Id. at 19-20.) Accordingly, the Commissioner contends that the ALJ accorded the opinions of Dr. Steward, Dr. Hasan, and Mr. Webb appropriate weight. (Id. at 20.)

In Reply, Claimant clarified her argument regarding Dr. Smith's opinion. (Document No. 19 at 2.) Claimant asserts that the ALJ should not have given her opinion significant weight because her opinion predated the most comprehensive mental evidence in the record and primarily was premised on a report the ALJ rejected. (Id.) Claimant asserts that her argument is supported by the holding in Boswell v. Barnhart, Civil Action No. 1:02-cv-00500 (S.D. W.Va. Sept. 30, 2003). (Id.) Claimant further asserts that the Commissioner, as did the ALJ, failed to "longitudinally assess" Claimant's evidence and failed to identify inconsistencies between source opinions. (Id. at 2-3.) Claimant asserts that the Commissioner also failed to distinguish Wooldridge v. Bowen, 816 F.2d 157 (4th Cir. 1987). (Id. at 3.)

1. RFC Assessment.

Claimant alleges that the ALJ erred in assessing her MRFC. (Document No. 15 at 9-12.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of

18

any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2010). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In assessing Claimant's RFC, the ALJ summarized the evidence of record including Claimant's testimony, the medical evidence, the opinion evidence, and Claimant's reported activities. .(Tr. at 18-24.) The ALJ noted that Claimant treated at BCMC and Southern Highlands for her mental impairments and that generally, she presented with normal mental status exam findings. (Id.) When treating at BCMC, the ALJ noted that Claimant's impairments improved generally with medication and that on several occasions she reported significant improvement in her impairments and that the medication was beneficial. (Id.) In January, 2009, Claimant reported that her mood and panic attacks were stable, but had an increase in anxiety. (Tr. at 19.) Mr. Webb's examination revealed few if any limitations and he assessed a GAF of 55. (Tr. at 20.) She did not initiate formal mental health treatment until January, 2009, which was six years after her alleged onset date, and Mr. Webb's examinations revealed minimal limitations. (Id.) He even assessed a GAF of 55, which was indicative of mild to moderate symptom severity. (Id.)

Furthermore, the state agency opinion evidence was consistent with the ALJ's MRFC assessment. Though Claimant alleges that Dr. Smith did not have access to medical evidence from Southern Highlands that was generated after the date of her assessment, the ALJ considered such evidence. In Boswell, this Court found that a state agency reviewing consultant's opinion that was

rendered prior to the generation of pertinent evidence was entitled little, if any, weight. The Commissioner, citing O'Donnell v. Commissioner of Soc. Sec., 2004 WL 2418289, *2 (3d Cir. Oct. 29, 2004), asserts however, that because the ALJ considered the evidence not addressed by Dr. Smith, it was proper for the ALJ to rely on her opinion. The Court agrees with the Commissioner and finds that because the evidence from Southern Highland was considered by the ALJ, in addition to Dr. Smith's opinion, then the ALJ's reliance on Dr. Smith's opinion was not in error.

Finally, the ALJ considered Claimant's reported activities, which included caring for her personal needs without assistance, managing her medications, doing her husband's laundry and cooking for him, caring for her pets, preparing simple meals, performing light household chores, shopping, paying bills, counting change, using a checkbook or money order, gardening, reading eighteenth and nineteenth century literature, and watching television. (Tr. at 17.)

Accordingly, the Court finds that the ALJ assessed Claimant's MRFC pursuant to the Regulations and considered all evidence of record. He accounted for Claimant's mental impairments when he limited her to tasks with short and simple instructions, occasional changes in the work setting, and dealing with things rather than people and the general public. (Tr. at 18.) The ALJ's MRFC assessment therefore, is supported by substantial evidence.

2. Opinion Evidence.

Claimant also alleges that the ALJ erred in assigning weight to the opinions of Dr. Hasan, Dr. Steward, Mr. Webb, and Ms. Robinson. (Document No. 17 at 7-11.) Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity

. . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2010).

In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2010). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's

21

medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2010). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling

22

weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2010). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ gave Ms. Robinson's opinion "some weight" because he concluded that Claimant had nonexertional limitations resulting from her mental impairments in addition to those assessed by Ms.

23

Robinson. (Tr. at 14.) Claimant asserts that the ALJ failed to acknowledge that although Ms. Robinson considered little evidence, her diagnoses later were confirmed by Drs. Stewart and Hasan. (Document No. 17 at 7.) The Court finds that the ALJ properly considered Ms. Robinson's opinion and gave appropriate weight to her opinion. The ALJ however, found that further limitations were warranted, and therefore, did not give her opinion controlling weight.

The ALJ acknowledged Mr. Webb's treatment of Claimant and his diagnoses. (Tr. at 20.) The ALJ however, determined that as a physician's assistant, Mr. Webb was not an acceptable medical source as defined in the Regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (2010). The Court finds that the ALJ properly discounted Mr. Webb diagnoses.

The ALJ did not give controlling weight to Dr. Steward's opinion because it was based on a one-time examination of Claimant at the request of Claimant's attorney, was on an issue reserved to the Commissioner , and was contrary to the longitudinal evidence of record. (Tr. at 22.) The evidence from BCMC demonstrated that Claimant's impairments had improved with medications and that her anxiety attacks were less frequent. Dr. Hasan assessed GAF scores of 60 in February, April, May, and August, 2009, and Mr. Webb assessed a GAF of 55 in January, 2009. In October, 2009, however, Dr. Steward assessed a GAF of 47. Though the scores were not assessed at the same time, they were assessed close in proximity and Claimant had not experienced any significant change in her condition prior to Dr. Steward's assessment. Accordingly, the Court finds that the ALJ properly did not assign controlling weight to Dr. Steward's opinion.

Finally, the ALJ gave Dr. Hasan's opinion only "some weight" because it was in the form of a checklist unaccompanied by a detailed explanation as to why Claimant was so limited. (Tr. at 22.) The ALJ also noted that Dr. Hasan's treatment notes did not evidence any objective abnormalities outside of Claimant's subjective complaints. His treatment notes revealed essentially near normal

mental status exams wherein Claimant interacted well, was cooperative, had intact insight and judgment, and reported no suicidal or homicidal ideation. (Id.) Dr. Hasan's opinion also was inconsistent with the other evidence of record that showed Claimant improved with medication. Although Dr. Smith's opinion also was in the form of a checklist, she included a note page that summarized the evidence she considered, including treatment notes and evaluations, Claimant's activities, and her assessment of the evidence. (Tr. at 355.) Accordingly, the Court finds that the ALJ properly did not give controlling weight to Dr. Hasan's opinion, despite his treating relationship with Claimant.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 16.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 18.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 28, 2012.

R. Clarke VanDervort
United States Magistrate Judge